NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY M. OWENS,<br><br>    Petitioner,<br><br> vs.<br><br>WARDEN A. HEDGPETH,<br><br>    Respondent. | No. C 10-3833 LHK (PR)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY |

   Petitioner, a state prisoner proceeding *pro se*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Court ordered Respondent to show cause why the petition should not be granted. Respondent has filed a response, and Petitioner has filed a traverse. Having reviewed the briefs and the underlying record, the Court concludes that Petitioner is not entitled to relief based on the claims presented, and DENIES the petition.

**PROCEDURAL HISTORY**

   On September 24, 2007, a jury found Petitioner guilty of first degree murder, and found that he personally and intentionally discharged a firearm. (Resp. Ex. 1 at 389.) Petitioner was sentenced to a term of fifty years to life. (Resp. Ex. 1 at 506.) On May 27, 2009, the California Court of Appeal affirmed the judgment, and denied Petitioner's state petition for habeas corpus. (Resp. Exs. 7, 8.) On September 9, 2009, the California Supreme Court denied review of

Petitioner's petitions for review. (Resp. Ex. 12.)

On September 27, 2010, Petitioner filed the underlying federal petition for writ of habeas corpus. In his petition, Petitioner alleged that: (1) there was insufficient evidence of premeditation and deliberation; (2) the trial court failed to *sua sponte* give a jury instruction on the *Dewberry* principle; and (3) trial counsel rendered ineffective assistance for failing to object to prosecutorial misconduct.

## BACKGROUND[1]

### I. Defendant's Killing of Vasquez

Defendant shot the victim, Daniel Vasquez, five times at close range, inflicting fatal wounds, on December 12, 2005. Vasquez, a drug dealer, was that day arranging to sell methamphetamine to defendant's mother, who had a serious drug-addiction problem.

### II. Prosecution Case

The prosecution theory was that defendant calculatedly elected, albeit perhaps on the spur of the moment, to kill Vasquez because he knew that Vasquez was contributing to his mother's addiction and resented it. Defendant was furious with Vasquez on the day of the killing for arranging to supply methamphetamine to his mother. He said he wanted to beat up Vasquez. Instead, he carried out a plan to end Vasquez's harmful behavior by firing multiple shots into him.

#### A. Defendant's Behavior Before the Killing

To advance its theory that defendant committed premeditated and deliberate first degree murder, the prosecution introduced evidence of his menacing behavior toward the victim before the killing.

Defendant became angry when he saw his mother talking with Vasquez and told her to stop using drugs and, in an order laced with obscenities, get back inside the house. Vasquez began to leave but said he would be back. Defendant later went to a party at which, perhaps not for the first time, he showed off a handgun that he had been carrying. As defendant and his brother, Alan Owens, were taking a smoking break outside the premises, defendant saw Vasquez and, again in an obscenity-laced fashion, told his brother that Vasquez was the individual "giving mom dope."

#### B. The Circumstances of the Killing

No commotion preceded Vasquez's killing. There was a conversation that included defendant and Vasquez and lasted less than a minute, but there was no yelling or fighting. The killing happened as defendant, his brother

---

[1] The facts of this case are taken from the California Court of Appeal's opinion in *People v. Owens*, No. H032302 (Cal. App. 6 Dist. May 27, 2009). (Resp. Ex. 8 ("Op.").)

Alan Owens, and Ely Barragan had left the party and saw Vasquez on the street. They approached him and some people who were standing with him. A conversation about Vasquez's furnishing methamphetamine to defendant's mother ensued. Barragan threw a bottle at Vasquez and defendant shot him five times and killed him. Vasquez was struck in the arm, back, face, neck, and left flank. It was not possible to detect the order in which defendant fired the shots. One of them was into Vasquez's face and was fired from three feet away or less. Another went through his arm and lodged in his neck. Neither of these shots, however, was fatal. Vasquez could have been killed by the third gunshot, which struck his back. It went through his spinal cord and was paralyzing, and the shot itself could have caused death. The fourth shot, also to Vasquez's back, could later have caused death by sepsis or peritonitis, but did not inflict immediately fatal trauma. The fifth shot, the one that entered his left flank, was a fatal wound. It perforated his aorta and lungs.

### C. Defendant's Behavior After the Killing

Defendant told his brother Alan Owens to get his "ass over here," meaning away from where Vasquez was lying. Owens wanted to help Vasquez but when defendant summoned him again he complied and moved. Defendant and Barragan returned to the party and defendant said, according to a witness's statement, that "some fool just got blasted." Defendant, displaying a sense of urgency but not panic, asked for car keys belonging to one of the residents, and he and others who had been present at the shooting departed in the resident's car. Once in the car defendant said to Owens that he was sorry that he had shot Vasquez in Owens's presence, but he did not express remorse about shooting Vasquez.

Interrogated by police following his arrest, defendant initially denied knowing Vasquez or anything about his death, but later admitted shooting him. He provided an account that might have supported a self-defense claim: Vasquez had annoyed defendant by trying to sell drugs to defendant's mother. But Vasquez "really didn't make me mad." Vasquez was acting disrespectfully and threateningly toward defendant. He was reaching for something in his pocket and defendant was scared of being attacked, particularly because he had possessed the gun for less than one hour and had never fired a gun before. He fired wildly and initially intending only to scare Vasquez. Defendant showed no remorse or emotional agitation during the interview.

As alluded to above, defendant's statements leaned toward an explanation that he had acted in self-defense. He told police that Vasquez "came back . . . trying to confront us. But like walking, too like slow. Then he put his hands in his pocket and said, how do you want to get down to the bottom of it? . . . I don't know what he was thinking when he put his hands in his pocket." "[W]hen he came back, then he was asking . . . what was the problem that we had . . . with dope and stuff like that. But like he; but, but he wasn't just asking, wasn't just asking; he was saying it in a way like, like he's mad and he's gonna fight us or whatever." "[H]e put his hands in his pockets, saying like, '[Ese], how do you want to get to the bottom of this? . . . ' Started walking too close. And then, I don't know. But like he was just doing it too fast for like . . . like he, I felt like he was gonna pull something out of his pocket or start swinging on me or something or start stabbing me or something." "I was feeling kind of scared cuz I didn't know what he had in his pocket." After the interview, defendant placed a telephone call in which

he told his interlocutor: "I'm going to try um, (inaudible) hopefully it will be ah, self defense."

### III.     Defense Case

The defense theory was that the killing amounted to voluntary manslaughter.

The defense produced evidence suggesting that Vasquez was a dangerous and volatile man. A few weeks before he was killed, Vasquez attacked a former girlfriend, a woman he had abused on several prior occasions. In 2000, he joined in another person's unprovoked attack on a man and robbed him. Vasquez's propensity for violence could have been made worse by methamphetamine and alcohol intoxication at the time he was killed. In addition, a prosecution witness had testified that a small black flashlight was recovered from a front pocket in the sweatshirt Vasquez was wearing when killed. At closing argument, defense counsel argued that defendant might have seen the outline of the flashlight against defendant's clothing and mistaken it for a gun barrel.

At closing argument, defense counsel also argued that the killing could have been the result of a sudden quarrel or provocation by Vasquez causing defendant to kill in the heat of passion.

Under any of these scenarios, counsel argued, defendant would be guilty only of voluntary manslaughter.

The defense also presented testimony that in the days before Vasquez's killing defendant had been carrying the gun that fired the fatal shots for purposes of self-protection.

(Op. at 2-5.)

## DISCUSSION

A.     <u>Standard of Review</u>

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, the application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

B.  Analysis

    1.  Sufficiency of the evidence

Petitioner claims that there was insufficient evidence of premeditation and deliberation to support his conviction of first degree murder. In support of his argument, Petitioner summarizes that the evidence at trial showed that although Petitioner was angry that Vasquez was providing Petitioner's mother with drugs, overall, Petitioner was in a good mood that day. (Pet. at 6a.) Petitioner's brother testified that Petitioner carried a gun for protection. (*Id.*) Petitioner's brother further testified that soon after Petitioner and Barragan unexpectedly ran into Vasquez, Petitioner's brother heard a gunshot. (*Id.* at 6b.) Therefore, Petitioner asserts, there was no evidence of any planning activity.[2] (*Id.*)

The California Court of Appeal discussed premeditation and deliberation under state law,

---

[2] To the extent Petitioner argues that the California Court of Appeal made an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2), Petitioner is mistaken. Section 2254(d)(2) is not readily applicable to federal habeas claims challenging the sufficiency of the evidence. *See McDaniel v. Brown*, 130 S. Ct. 665, 673 (2010).

and analyzed the claim as follows:

> "'An intentional killing is premeditated and deliberate if it occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse.' [Citation.]" (*People v. Jurado* (2006) 38 Cal.4th 72, 118.) "'"The true test is not the duration of time as much as it is the extent of the reflection. . . ."'" (*People v. Bolin* (1998) 18 Cal.4th 297, 332.) The time needed to reflect on the pending killing may be short. "First degree willful, deliberate, and premeditated murder involves a cold, calculated judgment, including one arrived at quickly." (*People v. Carasi* (2008) 44 Cal.4th 1263, 1306.) On the other hand, "the legislative classification of murder into two degrees would be meaningless if 'deliberation' and 'premeditation' were construed as requiring no more reflection than may be involved in the mere formation of a specific intent to kill." (*People v. Anderson* (1968) 70 Cal.2d 15, 26.)
>
> In *People v. Anderson*, *supra*, 70 Cal.2d 15, the court set forth a test for sufficiency of the evidence of premeditation and deliberation. Under that test, three main kinds of circumstances give evidentiary support to a murder conviction based on premeditation and deliberation, namely planning activity, motive, and manner of killing. "[T]o sustain a verdict of premeditated and deliberate murder, [*Anderson*] required (1) extremely strong evidence of planning, (2) evidence of motive in conjunction with evidence of planning or of a calculated manner of killing, or (3) evidence of all three indicia of premeditation and deliberation." (*People v. Memro* (1995) 11 Cal.4th 786, 863; *see Anderson*, *supra*, at p. 27.) [FN2.]
>
>> FN2. As early as *People v. Perez* (1992) 2 Cal.4th 1117, our Supreme Court was cautioning that "[t]he *Anderson* guidelines are descriptive, not normative" (*id.* at p. 1125); they are not "exhaustive" (*ibid.*). Since *Perez*, the court has stated that the *Anderson* factors "'need not be present in any particular combination to find substantial evidence of premeditation and deliberation.' [Citations.]" (*People v. Jurado*, *supra*, 38 Cal.4th at pp. 118-119.) Our Supreme Court has shown signs of moving well away from the strict *Anderson* formula in some cases, while in others it continues to adhere to it. (*Compare People v. Hovarter* (2008) 44 Cal.4th 983, 1019, *with People v. Carasi*, *supra*, 44 Cal.4th at p. 1306, and *People v. San Nicolas* (2004) 34 Cal.4th 614, 658.) Naturally, under the most malleable test – i.e., if the current test consists of whether a reasonable jury could infer from the circumstances of the crime generally that a criminal defendant committed premeditated and deliberate first degree murder (*see Hovarter*, *supra*, at pp. 1019-1020) – the killing here would meet that test because, as we will explain, it meets the strict *Anderson* test.
>
> . . .
>
> Contrary to defendant's view, there was sufficient evidence before the jury to sustain its first degree murder verdict under one prong of the *Anderson* test – the prong referring to evidence of motive combined with evidence of the manner of killing.
>
> For good reason, defendant had been angry with Vasquez prior to the killing. The evidence the jury received of a motive to kill Vasquez supports the verdict. (*People v. Perez*, *supra*, 2 Cal.4th at p. 1125.)

>     There was no fight or argument preceding the killing; rather, defendant gunned down the helpless Vasquez. He could have stopped firing after one shot but continued until he efficiently completed the task. The evidence the jury received of the manner of killing also supports the verdict. (*See People v. Hawkins* (1995) 10 Cal .4th 920, 956-957, disapproved on other grounds in *People v. Lasko* (2000) 23 Cal.4th 101, 110.) To be sure, multiple shots could also lead a jury to conclude that defendant engaged in rage-filled overkill. But the evidence was susceptible of either premeditation and deliberation or an impulsive killing, and the jury was entitled to rely on the former interpretation in reaching a first degree murder verdict.
>
>     Afterward defendant did not show signs of shock, extreme agitation, or disbelief at what had happened, but was methodical in planning an escape, and he was rather cold in describing Vasquez's death. Regarding the latter, he returned to the party and described, using language that the jury could regard as off-handed or contemptuous, that "some fool just got blasted." He regretted only that his brother had had to witness the killing. This evidence could, in the jurors' eyes, belie any theory of a rage killing or a killing in self-defense. It, too, supports their finding that the murder was premeditated and deliberate.
>
>     We agree with defendant that there is no evidence of a well thought out plan, extending over hours or days, to kill Vasquez, otherwise defendant would have been unlikely to show off the eventual murder weapon at a party; moreover, he did not lie in wait for him and their final and fateful encounter was arrived at by chance. Nevertheless, planning activity is not required. (*People v. Memro*, *supra*, 11 Cal.4th at pp. 863-864; *People v. Anderson*, *supra*, 70 Cal.2d at p. 27.) In addition, the planning need not resemble the preparation needed to carry out, for example, an elaborate bombing plot; to repeat, it suffices that the evidence permitted a rational jury to find that defendant exercised "cold, calculated judgment, including one arrived at quickly." (*People v. Carasi*, *supra*, 44 Cal.4th at p. 1306.) A rational jury could conclude that defendant saw Vasquez, decided to kill him, spent a minute conversing with him, and carried out his quickly devised plan. That would suffice to mark this killing as one involving premeditation and deliberation as opposed to express malice aforethought involving a rash or unconsidered decision (*see People v. Anderson*, *supra*, 70 Cal.2d at pp. 26-27).

(Op. at 5-9.)

A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt states a constitutional claim. *See Jackson v. Virginia*, 443 U.S. 307, 321 (1979). The Supreme Court has emphasized that "*Jackson* claims face a high bar in federal habeas proceedings . . ." *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam) (finding that the Third Circuit "unduly impinged on the jury's role as factfinder" and failed to apply the deferential standard of *Jackson* when it engaged in "fine-grained factual parsing" to

find that the evidence was insufficient to support petitioner's conviction). A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992); *see, e.g.*, *Coleman*, 132 S. Ct. at 2065 ("the only question under *Jackson* is whether [the jury's finding of guilt] was so insupportable as to fall below the threshold of bare rationality"). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, has there been a due process violation. *Jackson*, 443 U.S. at 324.

If confronted by a record that supports conflicting inferences, "it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial." *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam) (quoting *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011)) (finding that the Ninth Circuit erred by substituting its judgment for that of a California jury on the question whether the prosecution's or defense's expert witnesses more persuasively explained the cause of death)). Nor may a federal court fail to consider all of the evidence admitted at trial in light most favorable to the prosecution. *See McDaniel v. Brown*, 130 S. Ct. 665, 673-74 (2010). To grant relief, a federal habeas court must conclude that "the state court's determination that a rational jury could have found that there was sufficient evidence of guilt, i.e., that each required element was proven beyond a reasonable doubt, was objectively unreasonable." *Boyer v. Belleque*, 659 F.3d 957, 964-965 (9th Cir. 2011).

Applying California's test to determine premeditation and deliberation, Petitioner's claim does not succeed. The record supports the conclusion that a rational trier of fact could have found the elements of premeditation and deliberation beyond a reasonable doubt. As the state appellate court determined, Petitioner had motive, there was no evidence that Petitioner and Vasquez were fighting or arguing prior to the shooting, Petitioner fired multiple shots, and Petitioner appeared methodical rather than shaken after the shooting. Certainly, there was evidence at trial from which it could be inferred that Petitioner was afraid that Vasquez was going to attack him with a weapon. Nonetheless, a federal court must presume that the jury resolved those inferences in favor of the prosecution, and defer to that resolution. *See Jackson*, 443 U.S. at 326. Accordingly, the state courts' denial of this claim was not contrary to, or an

unreasonable application of, clearly established Supreme Court law.

### 2. *Dewberry* Jury Instruction

Petitioner claims that the trial court erred when it failed to *sua sponte* instruct the jury regarding the *Dewberry* principle. *See People v. Dewberry*, 51 Cal.2d 548 (1959). The California Court of Appeal summarized *Dewberry* as follows:

> *People v. Dewberry* (1959) 51 Cal.2d 548 (*Dewberry*), discussed a claim that manslaughter instructions were defective because they "were not accompanied with the further instruction that in the case of a reasonable doubt as between second degree murder and manslaughter, defendant was to be found guilty [only] of manslaughter." (*Id.* at p. 555.) The court held that as between the two offenses of manslaughter and murder, to the extent the former is a lesser included offense of the latter (*see id.* at p. 556), "the jury must be instructed that if they entertain a reasonable doubt as to which offense has been committed, they must find the defendant guilty only of the lesser offense." (*Id.* at p. 555.) Such an instruction must be given on the court's own initiative in a case presenting evidence that the defendant committed a less culpable type of unlawful homicide. (*People v. Crone* (1997) 54 Cal.App.4th 71, 76.)

(Op. at 9.) The California Court of Appeal reviewed the following jury instructions given to the jury: that Petitioner was innocent until proven guilty (CALCRIM No. 220); first degree murder (CALCRIM No. 521); voluntary manslaughter: heat of passion (CALCRIM No. 570); and voluntary manslaughter: imperfect self-defense (CALCRIM No. 571). The trial court also gave instructions explaining to the jury how to choose between the degrees of murder as well as between murder and manslaughter. (Op. at 11-12.) The state appellate court concluded that the instructions, as given, correctly stated the law and likely did not mislead the jury. (*Id.*)

First, Petitioner's argument in his traverse that he had a constitutionally protected liberty interest in an instruction under *Dewberry* fails. Under limited circumstances, a state statute may create a "liberty interest" protected by the federal right to due process that is enforceable in federal habeas corpus. *See Bonin v. Calderon*, 59 F.3d 815, 841 (9th Cir. 1995). Notably, Petitioner does not assert that any state statute entitles him to have a trial court give the instruction outlined in *Dewberry sua sponte*. Nonetheless, if the state permits its appellate courts to cure the deprivation of state law, as the state appellate court could do if an error had occurred, at most, any state-created right constitutes a "qualified" liberty interest. *Arreguin v. Prunty*, 208 F.3d 835, 837-47 (9th Cir. 2000) (citing *Clemons v. Mississippi*, 494 U.S. 738, 746 (1990)).

1  Here, the state appellate court's finding that the instructions as a whole were adequate, satisfied
2  any qualified liberty interest Petitioner may have had in the instruction. *See id.* at 837 (state
3  appellate court's application of a harmless error analysis sufficient to satisfy the standard for
4  state-created qualified liberty interests under *Clemons*).

5  Second, Petitioner's argument that the trial court failed to comply with *Dewberry* does
6  not state a federal claim for the violation of due process. A challenge to a jury instruction solely
7  as an error under state law, such as the state court decision in *Dewberry*, does not state a claim
8  cognizable in federal habeas corpus proceedings. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 71-72
9  (1991) (federal habeas corpus relief is not available for violations of state law or for alleged error
10 in the interpretation or application of state law). Moreover, Petitioner's argument that the trial
11 court failed to instruct the jury *sua sponte* on lesser-included offenses also fails to state a viable
12 claim for habeas relief because the failure of a state trial court to instruct on lesser-included
13 offenses in a non-capital case, such as this one, does not present a federal constitutional claim.
14 *See Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000).

15 Nevertheless, even assuming that Petitioner has raised a federal claim, a state trial court's
16 refusal to give an instruction does not alone raise a ground cognizable in a federal habeas corpus
17 proceeding. *See Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988). The error must so
18 infect the trial that the defendant was deprived of the fair trial guaranteed by the Fourteenth
19 Amendment. *See id.* Whether a constitutional violation has occurred will depend upon the
20 evidence in the case and the overall instructions given to the jury. *See Duckett v. Godinez*, 67
21 F.3d 734, 745 (9th Cir. 1995).

22 Here, the state appellate court found that the instruction under *Dewberry* was
23 unnecessary in light of the other instructions. Further, when read as a whole, it is clear that the
24 trial court's instructions provided the protections mandated by the *Dewberry* court. The jury was
25 instructed on the elements of first and second degree murder, and of voluntary manslaughter.
26 The jury was also told that, in order to find Petitioner guilty, it must do so beyond a reasonable
27 doubt, and that if it had a reasonable doubt as to a greater offense, it must find Petitioner not
28 guilty of that offense. These instructions convey the essence of a state *Dewberry* instruction and

did not render Petitioner's trial fundamentally unfair under the federal Constitution.

Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

3. <u>Ineffective Assistance of Counsel</u>

Petitioner claims that counsel rendered ineffective assistance by failing to object to three instances of prosecutorial misconduct during closing argument. First, Petitioner alleges that the prosecutor misstated the standard for determining when provocation reduces a homicide from murder to manslaughter. Second, Petitioner complains that the prosecutor incorrectly told the jury that it did not need to consider the lesser offenses until it had a unanimous verdict on the greater offense. And, third, Petitioner claims that the prosecutor committed misconduct when the prosecutor equated manslaughter with "murder with an excuse."

The California Court of Appeal discussed the legal principles of ineffective assistance of counsel, and then analyzed this claim as follows:

> **1. Standard For Voluntary Manslaughter Provocation**
>
> Defendant claims that trial counsel was ineffective for failing to object to the following statement regarding the legal standard for the kind of provocation that suffices to reduce an unlawful homicide from murder to voluntary manslaughter. The prosecutor argued:
>
> "In that situation, folks, that's the defendant creating a conflict, setting up a standard of conduct where he's saying now he was provoked by whatever words were exchanged, and he can't do that. It's whether or not that provocation was sufficient and whether or not an average person would be provoked in that situation and react in the same way. Would an average person who's grown up in this circumstance and seen their mom do drugs their whole life really, be in relationships with men who gave her drugs, would a normal, rash person, average person confront that person and then shoot them five times? That's what you have to ask yourself.
>
> "You have to find that the defendant acted under the direct and immediate influence of that provocation. Slight or remote provocation is not sufficient. So when the defendant says Danny said, How are we going to get to the bottom of this? Is that enough? Is that enough to provoke an average person to the point they will shoot somebody five times?"
>
> Defendant relies on *People v. Najera* (2006) 138 Cal.App.4th 212. *Najera* observed that the test for voluntary manslaughter is whether a reasonable person would respond to provocation by acting rashly, not on whether such a person would react by doing what the alleged actor did. "The focus is on the provocation – the surrounding circumstances – and whether it was sufficient to cause a reasonable person to act rashly. How the killer

responded to the provocation and the reasonableness of the response [are] not relevant to sudden quarrel or heat of passion." (*Id.* at p. 223.)

We need not address whether the prosecutor committed misconduct and whether, if she did, defense counsel should have objected contemporaneously. As stated, *ante*, page 2, footnote 4, there was no substantial evidence of voluntary manslaughter in this case. For that reason, even if action by defense counsel had forced the prosecutor to rephrase her remarks regarding voluntary manslaughter, we do not believe the jury would have returned a voluntary manslaughter verdict, an acquittal, or a second degree murder verdict. In sum, there is no reasonable probability that defense counsel's failure to object, even assuming he should have done so, would have resulted in a more favorable outcome for defendant.

**2. Suggesting Order of Proceeding to the Jury**

Defendant claims that trial counsel was ineffective for failing to object to the following statements, which defendant perceives as arguing that the jurors could not discuss lesser included offenses to first degree murder until they had unanimously agreed that he was not guilty of that greater offense. In so doing, he argues, the prosecutor misstated the law.

The prosecutor stated:

"Only after you've decided for some reason together that this is not a first degree murder, only then do you go on to the lesser charges of second degree murder and voluntary manslaughter. Under each one of those charges also you need to decide whether or not it's true that he used a weapon which caused the death of Danny Vasquez."

"In order to get to the lesser included offenses, ladies and gentlemen, you have to agree that the defendant is not guilty of first degree murder. You're not even going to get there. And to get to voluntary manslaughter, you would have to agree to acquit the defendant in this case of second degree murder. You won't get there."

Defendant calls our attention to *People v. Dennis* (1998) 17 Cal.4th 468. Dennis observed that "a court may restrict a jury from returning a verdict on a lesser included offense before acquitting on a greater offense, but may not preclude it from considering lesser offenses during deliberations. [Citations.] Thus, a trial court should not tell the jury it must first unanimously acquit the defendant of the greater offense before deliberating on or even considering a lesser offense." (*Id.* at p. 536.)

We perceive no reasonable likelihood that the jury would misapprehend the prosecutor's remarks to that effect or proceed to follow the approach defendant believes the prosecutor urged. The prosecutor did not tell the jurors that they were not free to discuss the offenses as they pleased. She argued only that the jurors must decide – "once you've decided" and if "you . . . agree" – that defendant was not guilty of first degree murder before proceeding to reach a decision on the lesser included offenses. This accurately states the law: "a jury must unanimously agree to acquit a defendant of a greater charge before returning a verdict on a lesser charge." (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 222.) What was true in *Dennis* is true here: "Plainly, the prosecutor did not tell the jury it could not or should

> not consider a lesser offense unless it first acquitted of the greater offense. Instead, the prosecutor did no more than offer the jury a suggested approach to its formal decisionmaking. . . . " (*People v. Dennis*, *supra*, 17 Cal.4th at p. 536.)
>
> **3.    Describing Manslaughter as Murder With an Excuse**
>
> Defendant claims that trial counsel was ineffective for failing to object when, in his view, the prosecutor committed misconduct by twice describing manslaughter as "murder with an excuse." In defendant's view, the prosecutor's remarks confused voluntary manslaughter with excusable homicide, which is not criminal (§ 195).
>
> The prosecutor stated:
>
> "Manslaughter is a lesser offense to murder. It's murder with an excuse. The defense will ask you to create or accept some type of excuse for the cold blooded murder of Danny Vasquez. The People will ask you to call it what it is: Murder in the first degree."
>
> "This is a murder. It's not a manslaughter. Voluntary manslaughter is murder with an excuse. It does not apply in this case. There was no provocation here to take this from a first degree murder to a second degree murder even, and definitely not to a manslaughter."
>
> For the reasons stated above – that voluntary manslaughter was not at issue in this case – no prejudice could have arisen from defense counsel's failure to challenge any prosecutorial mischaracterization of the nature of that offense.

(Op. at 15-18.)

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, Petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 687-77 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

In the first and third claims, Petitioner challenges the prosecutor's statements as they defined and described manslaughter. The California Court of Appeal rejected these two claims on the basis that even if counsel would have objected, Petitioner cannot demonstrate prejudice because there was no reasonable likelihood that the jury would have returned a different verdict.

The California Court of Appeal stated:

> We also note in passing that defendant cannot be heard to complain of any error regarding the jury's consideration of voluntary manslaughter or legitimate self-defense that would require an acquittal, because there was no substantial evidence that any of these circumstances accompanied his killing of Vasquez. At the beginning of closing argument, the prosecutor remarked that the jurors would "have one decision to make, which is whether or not this was a first degree murder or a second degree murder. After you heard all of the evidence in this case, that is actually what you need to decide." That was a correct summation of the posture of the case: neither voluntary manslaughter nor self-defense was at issue.
>
> Substantial evidence is defined as evidence that is "reasonable, credible and of solid value." (*People v. Dunkle* (2005) 36 Cal.4th 861, 885, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)
>
> To reduce an unlawful killing from murder to voluntary manslaughter, there must be either imperfect self-defense or adequate provocation (meaning a sudden quarrel or an act in the heat of passion). (*People v. Manriquez* (2005) 37 Cal.4th 547, 583.) There was no evidence of any such extenuating circumstance. There was no evidence at all of a sudden quarrel. Defendant quietly confronted Vasquez for perhaps a minute and then gunned him down. Nor was there evidence of heat of passion, notwithstanding that defendant was irked at Vasquez for attempting to sell drugs to his mother. "'"Heat of passion arises when 'at the time of the killing, the reason of the accused was obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from such passion rather than from judgment.'" [Citation.]'" (*Id.* at pp. 583-584.) There was no evidence of any heat of passion – i.e., quickly forming and boiling anger leading to rash behavior-that could lead defendant to kill Vasquez in a rage.
>
> As for self-defense, imperfect or legitimate, there was no substantial evidence of it. The only evidence touching on this topic consisted of defendant's statements to police – rambling and self-serving excuses put in context by defendant's phone call statement that he was hoping to go free by reason of self-defense. (*Ante*, p. 4.) The evidence that Vasquez had been violent on prior occasions was beside the point, because there was nothing to tie it to the circumstances of the killing.

(Op. at 12-13 n.4.) This Court agrees. Because the jury found beyond a reasonable doubt, all the elements of first degree murder, it is not reasonably probable that an objection to these two statements – even if sustained – would have changed the result of trial.

With respect to counsel's failure to object to the prosecutor's statements suggesting the order that the jury should consider the charges, the Court agrees with the California Court of Appeal that the prosecutor did not misstate the law. In California, the law is that "the jury may not *return a verdict* on the lesser offense unless it has agreed beyond a reasonable doubt that

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.LHK\HC.10\Owens833hcden.wpd          14

1  defendant is not guilty of the greater crime charged, but it should not be interpreted to prohibit a
2  jury from *considering* or *discussing* the lesser offenses before returning a verdict on the greater
3  offense" *People v. Kurtzman*, 46 Cal.3d 322, 329 (1988) (emphasis in original).  Here, the
4  prosecutor's statements were correct because they did not prohibit the jury from considering or
5  discussing the lesser included offenses before it returned a verdict on first degree murder.  Thus,
6  counsel's failure to object was not deficient performance.  *See Strickland*, 466 U.S. at 687-88;
7  *see also Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998) (recognizing that it is
8  unnecessary to discuss the prejudice prong if there is a finding that counsel's performance was
9  not deficient).

## CONCLUSION

Petitioner's petition for writ of habeas corpus is DENIED.

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling.  *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.  Petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a COA is DENIED.

The Clerk shall close the file.

IT IS SO ORDERED.

DATED:     8/27/12

_____
LUCY H. KOH
United States District Judge